UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Alan F. Beane and</u>
<u>Mii Technologies, LLC</u>,
     Plaintiff and
     Nominal Plaintiff

     v.                          Civil No. 06-cv-446-SM
                                      Opinion No. 2008 DNH 082

<u>Glenn L. Beane and</u>
<u>Glenn Beane, LLC</u>,
     Defendants and
     Third-Party Plaintiffs

     v.

<u>Alan F. Beane; Mii</u>
<u>Technologies, LLC;</u>
<u>and Sara E. Beane</u>,
     Counterdefendants and
     Third-Party Defendants

<u>**O R D E R**</u>

In an order dated January 15, 2008 (document no. 90), the court advised plaintiffs that they could either seek voluntary dismissal of their complaint, or show cause on or before February 10, 2008, why their Lanham Act claim should not be dismissed. On February 11, plaintiffs filed a purportedly assented-to motion for voluntary dismissal of all their claims, without prejudice (document no. 99), pursuant to Rule 41 of the Federal Rules of

Civil Procedure ("FRCP").  That motion was denied by endorsed order dated February 12, 2008, given defendants' assertion that they did not fully assent.  Subsequently, plaintiffs filed two documents: (1) a memorandum of law in support of their response to the order dated January 15, 2008, and in support of a motion to permit Alan Beane[1] to pursue the litigation in the absence of Mii Technologies (document no. 105); and (2) "Plaintiffs' Motion for Order Determining that Mii Technologies, LLC is Not an Indispensable Party under FRCP 19 and Granting Mii Leave to Dismiss Civil Action Without Prejudice to Continuation of Action by Alan Beane" (document no. 107).

In response to the court's show-cause order, plaintiffs argue that: (1) Mii is a nominal plaintiff whose citizenship is irrelevant in determining the existence of complete diversity; (2) if Mii is not a nominal party, it is at least not a necessary party, so it is entitled to dismiss this action – or be dropped from it – without prejudice;[2] and (3) federal-question jurisdiction exists by virtue of both the claims raised in Count

---

[1] Hereinafter, Alan Beane is referred to as "Alan."

[2] That argument is also presented in document no. 107.

VIII, which involve uniquely federal questions regarding the ownership of and rights under patents developed for Mii, and the federal ERISA and tax issues raised in defendants' counterclaims.

Defendants counter that: (1) there is complete diversity because Mii is only a nominal party; (2) Glenn Beane's[3] counterclaims present federal questions sufficient to support supplemental jurisdiction under 28 U.S.C. § 1367(a); (3) Count IX, the Lanham Act claim, should be dismissed pursuant to Rule 12(b)(6) of the FRCP; and (4) the court was correct in denying plaintiffs' motion for voluntary dismissal without prejudice (document no. 99).  In response to document no. 107, which seeks dismissal of Mii as a party, defendants raise various procedural objections, characterize document no. 107 as a second attempt to obtain the relief plaintiffs sought in their previously denied motion for voluntary dismissal,[4] and contend that Mii is a necessary and indispensable party, which precludes its dismissal.

---

[3] Hereinafter, Glenn Beane is referred to as "Glenn."

[4] Defendants' characterization is incorrect.  Document no. 99 sought voluntary dismissal of the entire action while document no. 107 seeks only dismissal of Mii as a party.

**Discussion**

<u>A.  Plaintiffs' Lanham Act Claim</u>

As a preliminary matter, it appears that plaintiffs concede that the Lanham Act claim should be dismissed.  Accordingly, Count IX of plaintiffs' amended verified complaint (document no. 14) is dismissed for failure to state a claim.  <u>See</u> FED. R. CIV. P. 12(b)(6); <u>Digigan, Inc. v. iValidate, Inc.,</u> No. 02 Civ. 420(RCC), 2004 WL 203010, at *5 (S.D.N.Y. Feb. 3, 2004) (misrepresentation concerning ownership of a patent does not violate the Lanham Act because a patent is not a "good or service" for purposes of trademark law).

<u>B.  Other Bases for Federal-Question Jurisdiction</u>

While they were not directed to do so by the court's previous order, plaintiffs advance two other grounds for exercising federal-question jurisdiction — the federal question purportedly posed in Count VIII, which seeks a declaratory judgment of ownership of intellectual property rights — and the federal questions assertedly raised in defendants' counterclaim. Neither argument is persuasive.

4

1.  Defendants' Counterclaims

Plaintiffs contend, and defendants agree, that federal-question jurisdiction properly rests upon the Internal Revenue Code and ERISA issues raised in Counts I[5] and IV[6] of defendants' counterclaim (document no. 28).  But that argument is squarely foreclosed by the well-pleaded complaint rule.  The statute

---

[5] Count I is captioned "For Declaratory Judgment," and it seeks declarations that: (1) Glenn ceased being a member of Mii no later than February 4, 2004; (2) Mii ceased to exist as an LLC no later than February 4, 2004; (3) Alan's October 19, 2006, bankruptcy filing terminated his membership in Mii; and (4) Mii's informational tax returns for 2004, 2005, and 2006, and the associated K-1s issued to Glenn were improper.

[6] Count IV is captioned "For Reimbursement of Payments Made/ Expenses Incurred, or Which Could be Incurred in the Future, by Glenn on Behalf of Mii, Alan and/or Sara [Beane]," and it asks the court, among other things, to:

> Order[ ] Alan and Mii to take action to terminate any exposure Glenn may have to the Department of Labor and plan participants in the Mii profit sharing plan, including but not limited to (1) assembling and filing employee information so that annual ERISA reports can be made for all the years Mii filed no annual reports; (2) paying any fees, fines, penalties or other payments to Summit Financial Corporation, the plan administrator, the U.S. Department of Labor, and any other third parties, as are necessary to administer the plan to the present, terminate it, and pay out the plan amounts to participants, and enable Glenn's trustee status, if it is still in effect, to be terminated; (3) paying any amounts due to plan participants.

(Answer, at 50).

pertaining to federal-question jurisdiction provides: "The
district courts shall have original jurisdiction of all civil
actions <u>arising under</u> the Constitution, laws, or treaties of the
United States."  28 U.S.C. § 1331 (emphasis added).  The term
"arising under" has been explained by the Supreme Court:

> Admittedly, our prior cases have only required us
> to address whether a federal defense, rather than a
> federal counterclaim, can establish "arising under"
> jurisdiction.  Nevertheless, those cases were decided
> on the principle that federal jurisdiction generally
> exists "only when a federal question is presented on
> the face of the plaintiff's properly pleaded
> complaint."  <u>Caterpillar Inc. v. Williams</u>, 482 U.S.
> 386, 392 (1987) (emphasis added).  As we said in <u>The
> Fair v. Kohler Die & Specialty Co.</u>, 228 U.S. 22, 25
> (1913), whether a case arises under federal patent law
> "cannot depend upon the answer."  Moreover, we have
> declined to adopt proposals that "the answer as well as
> the complaint . . . be consulted before a determination
> [is] made whether the case 'ar[ises] under' federal law
> . . . ."  <u>Franchise Tax Bd. of Cal. v. Construction
> Laborers Vacation Trust for Southern Cal.</u>, 463 U.S. 1,
> 10-11, n.9 (1983) (citing American Law Institute, Study
> of the Division of Jurisdiction Between State and
> Federal Courts § 1312, pp. 188-194 (1969)).  It follows
> that a counterclaim—which appears as part of the
> defendant's answer, not as part of the plaintiff's
> complaint—cannot serve as the basis for "arising under"
> jurisdiction.  <u>See</u>, <u>e.g.</u>, <u>In re Adams</u>, 809 F.2d 1187,
> 1188, n.1 ([5th Cir.] 1987); <u>FDIC v. Elefant</u>, 790 F.2d
> 661, 667 ([7th Cir.] 1986); <u>Takeda v. Northwestern
> National Life Ins. Co.</u>, 765 F.2d 815, 822 ([9th Cir.]
> 1985); 14B C. Wright, A. Miller, & E. Cooper, Federal
> Practice and Procedure § 3722, pp. 402-414 (3d ed.
> 1998).

Allowing a counterclaim to establish "arising under" jurisdiction would also contravene the longstanding policies underlying our precedents. First, since the plaintiff is "the master of the complaint," the well-pleaded-complaint rule enables him, "by eschewing claims based on federal law, . . . to have the cause heard in state court." Caterpillar Inc., supra, at 398-399.  The rule proposed by respondent, in contrast, would leave acceptance or rejection of a state forum to the master of the counterclaim.  It would allow a defendant to remove a case brought in state court under state law, thereby defeating a plaintiff's choice of forum, simply by raising a federal counterclaim.  Second, conferring this power upon the defendant would radically expand the class of removable cases, contrary to the "[d]ue regard for the rightful independence of state governments" that our cases addressing removal require. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 109 (1941) (internal quotation marks omitted).  And finally, allowing responsive pleadings by the defendant to establish "arising under" jurisdiction would undermine the clarity and ease of administration of the well-pleaded-complaint doctrine, which serves as a "quick rule of thumb" for resolving jurisdictional conflicts.  See Franchise Tax Bd., supra, at 11, 103 S.Ct. 2841.

For these reasons, we decline to transform the longstanding well-pleaded-complaint rule into the "well-pleaded-complaint-or-counterclaim rule" urged by respondent.

Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc., 535

U.S. 826, 831-32 (2002) (parallel citations omitted).  Not all of

the issues discussed in Holmes are present in this case,

especially given the apparent preference of both parties to

litigate in this forum.[7]  But, even so, <u>Holmes</u> requires rejection of the argument that defendants' counterclaims establish federal-question jurisdiction.[8]

    2.  Plaintiffs' Count VIII

    Similarly unavailing is plaintiffs' argument that federal-question jurisdiction is established by the claim they describe in Count VIII.  As noted above, under the well-pleaded complaint rule, "federal jurisdiction generally exists only when a federal

---

[7] The court notes the apparent preference of both parties to litigate in this forum, but it is well established that "[a] court without subject-matter jurisdiction may not acquire it by consent of the parties." <u>Fafel v. DiPaola</u>, 399 F.3d 403, 410 (1st Cir. 2005); <u>Espinal-Dominguez v. P.R.</u>, 352 F.3d 490, 495 (1st Cir. 2003) ("litigants cannot confer subject matter jurisdiction on a federal court by 'indolence, oversight, acquiescence, or consent'") (quoting <u>United States v. Horn</u>, 29 F.3d 754, 768 (1st Cir. 1994)).

[8] Because federal-question jurisdiction cannot be established by a counterclaim, as a matter of law, it is not necessary to determine whether any of defendants' counterclaims would invoke the court's federal-question jurisdiction if brought by Glenn as a plaintiff.  However, for the guidance of the parties, the court notes that while Count I mentions the Internal Revenue Code, and Count IV mentions ERISA, it does not appear that either Count I or Count IV asserts a claim under either statutory scheme.  <u>See</u> <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 125 S. Ct. 2363, 2366-68 (2005); <u>Templeton Bd. of Sewer Comm'rs v. Am. Tissue Mills of Mass., Inc.</u>, 352 F.3d 33, 37-41 (1st Cir. 2003); <u>Penobscot Nation v. Ga.-Pac. Corp.</u>, 254 F.3d 317, 321 (1st Cir. 2001).

question is presented on the face of the plaintiff's properly pleaded complaint." Holmes, 535 U.S. at 831 (citation and internal quotation marks omitted).  As the court of appeals for this circuit has explained:

> Whether a claim arises under federal law is determined under the well-pleaded complaint rule.  Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 10, (1983); see also Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908).  Under that rule, "[the jurisdictional question] must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration," without reference to any other pleadings.  Franchise Tax Bd., 463 U.S. at 10 (internal quotations omitted).  In other words, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." Id. at 1011 (quoting Gully v. First Nat'l Bank, 299 U.S. 109, 112 (1936)).

Templeton Bd. of Sewer Comm'rs. v. Am. Tissue Mills of Mass., Inc., 352 F.3d 33, 36-37 (1st Cir. 2003) (parallel citations omitted).

The claim presented in plaintiffs' Count VIII does not assert, as an essential element, a right or immunity created by the Constitution or the laws of the United States.  Count VIII is captioned "Declaratory Judgment of Ownership of Intellectual

Property Rights."  More specifically, it asserts: "Glenn Beane had both <u>contractual</u> and <u>equitable</u> obligations to assign rights to <u>inventions</u> invented during the course of his performance of work for Mii to Mii."  (Am. Compl. ¶ 105 (emphasis added).)  The complaint further asserts that: (1) Glenn developed Mii's press technology while working for Mii (¶ 106); (2) all the <u>inventions</u> Glenn invented before February 4, 2004, are subject to an obligation to assign intellectual property rights to Mii (¶ 107 (emphasis added)); (3) Glenn represented to potential customers that he owned the intellectual property on which Mii's press systems were based (¶ 108); and (4) Glenn represented to the Patent and Trademark Office that he had not assigned his right to prosecute <u>patent applications</u> to Mii (¶ 109 (emphasis added)).

According to plaintiffs, Count VIII presents a federal question because in it they seek a determination and declaration of the nature and extent of their ownership rights in various patents, and federal law authoritatively governs the issuance, scope, and enforcement of patents and rights arising under patents.

Plaintiffs' position is undermined by the language of the
complaint itself, which speaks of "contractual and equitable
obligations to assign rights to inventions" (emphasis added), but
refers to no basis in federal law for the relief plaintiffs seek.
Moreover, plaintiffs cite no authority for the proposition that a
dispute over patent ownership arises under federal law and,
indeed, the Court of Appeals for the Federal Circuit has
repeatedly held that such causes of action do not arise under
federal law:

> State statutory and common law have long been
> recognized as governing the ownership of patent
> property. See, e.g., Jim Arnold Corp. v. Hydrotech
> Sys., Inc., 109 F.3d 1567, 1572 (Fed. Cir. 1997)
> ("[T]he question of who owns the patent right and on
> what terms typically is a question exclusively for
> state courts."); Roach v. Crouch, 524 N.W.2d 400, 403
> (Iowa 1994) (question of patent ownership is properly
> triable in state court).  There is no conflict between
> the creation of the patent as a creature of federal
> law, and ownership of patent property governed by state
> law.

DDB Techs., L.L.C. v. MLB Advanced Media, L.P., 517 F.3d 1284,

___, 2008 WL 375202, at *9 (Fed. Cir. 2008) (Newman, J.,

dissenting in part, concurring in part); see also Xechem Int'l,

Inc. v. Univ. of Tex. M.D. Anderson Cancer Ctr., 382 F.3d 1324,

1332 (Fed. Cir. 2004) ("Federal preemption of causes arising

under the Patent Act does not include matters of ownership or
license."); <u>Prize Frize, Inc. v. Matrix (U.S.) Inc.</u>, 167 F.3d
1261, 1264 (9th Cir. 1999), <u>superseded by statute on other
grounds</u> ("The fact that the state law remedies that Prize Frize
seeks for alleged trade secret infringement may tangentially
involve issues of patent ownership does not convert the state
causes of action into federal law claims.") (citations omitted).
In sum, as with the claim stated in Count IX, the claim stated in
Count VIII does not arise under federal law and, as a
consequence, provides this court with no basis for exercising its
federal-question jurisdiction.


C.  Diversity Jurisdiction

       Plaintiffs do not present a federal question sufficient to
invoke federal-question jurisdiction, and diversity jurisdiction
appears to be unavailable as well.


       Plaintiffs (joined by defendants) again attempt to establish
diversity jurisdiction, relying on <u>Navarro Savings Ass'n v. Lee</u>
for the proposition that "a federal court must disregard nominal
or formal parties and rest jurisdiction only upon the citizenship

of real parties to the controversy."  446 U.S. 458, 461 (1980)
(citations omitted).  Plaintiffs contend that Mii should be
considered a nominal party, whose citizenship does not destroy
diversity.

   Navarro Savings is inapposite.  That case involved a citizen
of Texas on one side and, on the other side, "eight individual
trustees of Fidelity Mortgage Investors, a business trust . . .
[who] hold title to real estate investments in trust for the
benefit of Fidelity's shareholders."  Id. at 459.  The issue in
that case was whether complete diversity was destroyed by the
fact "that some of Fidelity's beneficial shareholders were Texas
residents."  Id. at 460.  The trial court granted Navarro's
motion to dismiss for lack of subject-matter jurisdiction, and
the court of appeals reversed, holding "that the . . . trustees
[and not the beneficial shareholders] were [the] real parties in
interest because they had full power to manage and control the
trust and to sue on its behalf."  Id.  The Supreme Court affirmed
the court of appeals, based upon its determination that the
beneficial shareholders were "nominal or formal parties," and
thus irrelevant to the jurisdictional calculus, rather than real

parties in interest whose presence would destroy diversity.  Id.
at 460-66.

     As the claims are framed in this case, Mii is not analogous
to the beneficial shareholders in Navarro.  Plaintiffs allege in
their complaint that "Glenn Beane was named as an inventor on all
patents and patent applications related to the press technology
developed by Mii and, prior to 2004, executed formal assignments
of his rights in all such inventions to Materials [Innovation,
Inc.], who has exclusively licensed these patents to Mii."  (Am.
Compl. ¶ 12.)  Thus, Mii is alleged to hold exclusive property
rights in the patents underlying the request for declaratory
relief in Count VIII.  Count I asserts that Glenn Beane
intentionally breached his fiduciary duty to Mii which "resulted
in a severe financial loss to Mii and to Alan Beane personally."
(Am. Compl. ¶ 68.)  Count II asserts that Glenn breached his
fiduciary duty of loyalty to Mii.  Count III asserts that Glenn
breached his fiduciary duty of care to Mii.  Count IV asserts
that Glenn breached a duty of confidentiality he owed Mii.  Count
V asserts that Glenn misappropriated trade secrets belonging to
Mii.  Counts VI and VII assert that Glenn tortiously interfered

with Mii's existing and prospective contractual relations.  Count
X asserts that defendants have been unjustly enriched at Mii's
expense.  And, among their prayers for relief, plaintiffs ask the
court to "[i]ssue a declaratory judgment that all intellectual
property embodied in the press systems and technology, including
all patents, copyrights and trade secrets, are the property of
Mii Technologies, L.L.C."[9]  Given the allegations in plaintiffs'
complaint, Mii is not a "nominal plaintiff" at all.[10]  The rights
upon which plaintiffs base their claims are Mii's rights, and the

---

[9] Plaintiffs' mention of copyrights in their fourth prayer
for relief is the first mention of copyrights anywhere in the
complaint; no copyrights are mentioned either specifically or
generally in the factual allegations or in any of the eleven
claims for relief.  Count VIII, which seeks a declaratory
judgment concerning ownership of intellectual property, speaks
only of patents and says nothing about copyrights.  While
"ownership of copyright interests . . . is governed by the
Copyright Act," Cambridge Literary Props., Ltd. v. W. Goebel
Porzellanfabrik, G.m.b.H. & Co. KG, 510 F.3d 77, 85 (1st Cir.
2007), the issue of copyright ownership is raised far too
offhandedly in this case to be considered apparent on the face of
a well-pleaded complaint and, therefore, a proper basis for the
exercise of federal-question jurisdiction.

[10] Mii is also not a just a "stakeholder," that is, a party
"merely joined to perform the ministerial act of conveying the
title [of disputed property] if adjudged to the complainant."
Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc., 204
F.3d 867, 873 (9th Cir. 2000) (quoting 13B CHARLES ALAN WRIGHT,
ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3603,
at 409 & n.2 (2d ed. 1984)).  Rather, as demonstrated by the
complaint, Mii is a party that possesses, and seeks to vindicate,
its own rights.  See id. (citation omitted).

remedies sought would directly benefit Mii.[11]  Thus, Mii is not

just a nominal party whose citizenship must be – or even could be

– disregarded in determining whether the court has diversity

jurisdiction.  As Mii is a New Hampshire plaintiff (an LLC

organized under the laws of New Hampshire) suing two New

Hampshire defendants, complete diversity of citizenship is not

present.


D.  Dismissal of Mii

     Plaintiffs' fall-back argument is that in the event the

court determines Mii to be more than a nominal party, it is

nonetheless a dispensable party and should be allowed to dismiss

its claims without prejudice, to permit the exercise of diversity

jurisdiction.  Defendants counter that Mii is a necessary and

---

     [11] If there is any "nominal party" in this case, it is Alan
Beane.  According to the complaint, Alan "brought this action
both personally and on behalf of Mii" (Am. Compl. ¶ 60), and the
complaint specifically refers to RSA 304-C:76, the statute that
governs actions brought by a member or members "in the right of a
limited liability company to recover a judgment in its favor"
(emphasis added).  As the Court of Appeals for the Eleventh
Circuit has explained: "The plaintiff stockholder in a
stockholder's derivative suit is 'at best the nominal
plaintiff.'"  Liddy v. Urbanek, 707 F.2d 1222, 1224 (11th Cir.
1983) (quoting Ross v. Bernhard, 396 U.S. 531, 538 (1970)).  That
same reasoning would appear to cover Alan Beane's participation
in this action.

indispensable party, such that dismissal of Mii would also require dismissal of Alan's claims.[12]

    With respect to plaintiffs' request for dismissal of Mii, "[c]ourts have used Rule 21 [of the FRCP] to preserve diversity jurisdiction by dropping a nondiverse party who is dispensable (or 'not indispensable') to the action under Rule 19." 15 MARTIN H. REDISH, MOORE'S FEDERAL PRACTICE § 102.18[1] (3d ed. 2008). Rule 21 provides: "On motion or on its own, the court may at any time, on just terms, add or drop a party." FED. R. CIV. P. 21. Rule 21 may be used to preserve diversity jurisdiction. See Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832 (1989) ("it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time"); see also Murphy v. Newport Waterfront Landing, Inc., 806 F. Supp. 322, 325 (D.R.I. 1992) (dropping one nondiverse defendant, who was employee of diverse defendant, when plaintiff sued employer under doctrine of respondeat superior, and employee

---

[12] They further state that they would assent to voluntary dismissal of plaintiffs' entire suit, but only with prejudice and if plaintiffs pay Glenn's attorneys' fees and expenses in defending this suit.

was not necessary party to suit against employer under respondeat
superior doctrine).

It is apparent that Mii is a necessary party to this suit
under Fed. R. Civ. P. 19(a).  The substantive claims brought by
plaintiffs arise from and relate to Mii's ownership interests in
intellectual property, or involve allegations of breaches of
fiduciary duties owed by defendants to Mii.  That is, Mii's
substantive rights are at stake and those rights are sought to be
vindicated in this suit by both Mii and Alan.  In Mii's absence,
complete relief cannot be accorded among the parties that would
remain, and, as a practical matter, resolution of the litigation
in Mii's absence would impair Mii's ability to protect its
interests and would pose a substantial risk of creating
inconsistent obligations upon those remaining as parties.  Id.;
see Weber v. King, 110 F.Supp. 2d 124 (E.D.N.Y. 2000) (LLC is an
indispensable party to litigation between members involving LLC's
interests, even where all members of the LLC are party to the
suit).

Having determined that Mii is a necessary party, the
relevant question becomes whether Mii is a dispensable party,
that is a party without which in equity and good conscience, the
action could proceed without.  "To help courts navigate the path
of equity and good conscience, Rule 19(b) lists four factors: (1)
the extent to which a judgment rendered in the person's absence
might be prejudicial to . . . those already parties; (2) the
extent to which relief can be tailored or lessened to avoid
prejudice; (3) the adequacy of a judgment rendered in the
person's absence; and (4) 'whether the plaintiff will have an
adequate remedy if the action is dismissed for nonjoinder.'"
United States v. Tribal Dev. Corp., 100 F.3d 476, 79 (7th Cir.
1996).  "Only if the court concludes . . . that the party should
be included in the action but it cannot be, must it go on to
decide whether the litigation can proceed at all in the party's
absence."  Thomas v. United States, 189 F.3d 662, 667 (7th Cir.
1999).

Here, keeping Mii as a party destroys diversity
jurisdiction, so the case can only proceed in its absence if
there is a way "to structure a judgment in the absence of [Mii]

19

that will protect both [Mii's] own rights and the rights of the
existing litigants."  Id.  If not, Mii is "indispensable" and
should be dropped under Rule 21.  As in Trademark Retail, Inc. v.
Apple Glen Investors, LP, 196 F.R.D. 535 (N.D. Ind. 2000),
because Mii is a separate legal identity, with rights,
obligations, and liabilities distinct from its members, see N.H.
Rev. Stat. Ann. ch. 304-C, and the LLC's members are engaged in a
conflict that necessarily implicates the rights and obligations
of the LLC, it is apparent that Mii is both a necessary and an
indispensable party to this suit.  As such, it should not be
dropped.  Proceeding without Mii would be prejudicial to it,
given that the asserted claims involve, in a significant way,
Mii's distinct legal interests.  Secondly, there is no way to
structure relief in this case in a way that would lessen that
prejudice — at the core of this dispute are issues regarding what
Mii owns and whether defendants have breached fiduciary duties
owed to Mii, resulting in damage to it.

Defendants would also be prejudiced by going forward without
Mii — the most obvious example being that however the case is
resolved, Mii could bring its own suit in a proper forum,

potentially subjecting defendants to inconsistent judgments. And, finally, plaintiffs have readily available alternative remedies in state court, where jurisdiction over all the parties is not in doubt.

## Conclusion

The court is without federal-question jurisdiction.  Mii is a necessary and indispensable party, but its participation destroys diversity jurisdiction.  Therefore, the case is dismissed for lack of subject-matter jurisdiction.


**SO ORDERED.**


Steven J. McAuliffe
Chief Judge

April 18, 2008

cc:  William S. Gannon, Esq.
     W. E. Whittington, Esq.